UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>v.<br><br>Bobby Lee Tennant,<br><br>               Defendant.<br>_____ | No. CR 13-1165 TUC-RM(LAB)<br><br>**REPORT AND RECOMMENDATION** |

This matter was referred to the Magistrate Judge to conduct an evidentiary hearing on the Government's Petition to Revoke Supervised Release filed on February 27, 2015. The Petition asserts that Defendant: A (1) failed to attend scheduled office visits on January 30 and February 24, 2015; B (1) used amphetamines on January 13, 2015 as evidenced by laboratory confirmed urinalysis tests[1], (2) used synthetic marijuana on January 26, 2015 as evidenced by a verbal admission, (3) possessed drug paraphernalia on January 26, 2015, which was confiscated from Defendant; C (1) failed to submit to urinalysis testing on January 9, February 13 and 17, 2015, as evidenced by treatment provider reports,[2] and (2) failed to attend Moral Reconation Therapy on January 9 and 30, February 13 and 17, 2015, as evidenced by probation office records. An evidentiary hearing was conducted on April 7, 2015. United States Probation Officer Gloria Adamski-Soto testified for the government. Defendant Tennant was present and represented by counsel. He testified in his own defense.

---

[1] Allegation B was modified by the government during the hearing to exclude amphetamine use on January 26, 2015.

[2] Allegation C (1) was modified by the government during the hearing to exclude failure to submit to urinalysis testing on January 13 and 26, 2015.

1  The government presented exhibits 1 through 7.  Defendant objected to exhibits 1 and 2.
2  Exhibits 3 through 7 were admitted.
3       When the government rested, the defense moved to dismiss allegation B (1) that Mr.
4  Tennant used amphetamines on January 13, 2015, as evidenced by the laboratory confirmed
5  urinalysis tests. The Court did not admit exhibits 1 and 2, the lab results.  The government
6  responded that without the exhibits there was no evidence to support the allegation, except
7  for the testimony of the probation officer.  At the close of evidence, the defense argued that
8  it was impossible for Mr. Tennant to comply with his condition that he maintain employment
9  and also comply with conditions that he follow the probation officer's instructions, submit
10 to drug testing, and attend therapy.  The government responded that impossibility is not a
11 defense, that Mr. Tennant's testimony about the pipe was not credible, and that it proved the
12 allegations by a preponderance of the evidence.
13
14 **I.    Findings of Fact**
15      On January 6, 2014, Defendant was sentenced to 21 months in the Bureau of Prisons,
16 followed by 60 months of supervised release for bank fraud.  Among the conditions of
17 Defendant's supervised release were that he truthfully answer all inquiries by the probation
18 officer and follow her instructions (standard condition # 4); not possess or use any narcotic
19 or other controlled substance or any paraphernalia related to such substances (standard
20 condition # 9); and participate in a substance abuse treatment program and substance abuse
21 testing as instructed by the probation officer (special condition # 1).
22      A. <u>Gloria Adamski-Soto</u>
23      Gloria Adamski-Soto is the probation officer assigned to supervise Mr. Tennant.  She
24 had three personal contacts during the two months she supervised Mr. Tennant.  There were
25 no telephone contacts because Mr. Tennant did not answer his phone.  He also did not call
26 or leave any messages for Ms. Adamski-Soto.  He constantly called Probation Officer
27 Georgeanna Adams, although he had been given Ms. Adamski-Soto's number on numerous
28

1  occasions. Ms. Adams forwarded the information to Ms. Adamski-Soto from any messages
2  Mr. Tennant left.
3     One of the conditions of supervised release was that Mr. Tennant follow the probation
4  officer's instructions. Ms. Adamski-Soto went to Mr. Tennant's home on January 26th and
5  instructed him to come to the office on Friday, January 30th. Instead, he showed up at on
6  January 27th and was told to return on the 30th. He did not return. Exhibit 6 is a letter Ms.
7  Adamski-Soto sent to Mr. Tennant instructing him to come into the office on February 24th.
8  The copy sent by certified mail was returned. The copy sent by regular mail was not returned.
9  Mr. Tennant did not show up and there was no further contact before the petition to revoke
10 was filed.
11    Mr. Tennant's conditions included that he not possess any drug paraphernalia or use
12 any narcotics or controlled substances. He had a positive drug screen, which was confirmed
13 by Alere Laboratory on January 13, 2015. Exhibits 1 and 2 are the results of the drug test
14 and the chain of custody. The original form that is sent with the sample to the lab in New
15 Mexico was not presented. The documents that have Mr. Tennant's signature and the
16 signature of the person who collected the sample and prepared it for mailing, are missing.
17    Exhibit 3 is a log from TASC that shows when the defendant was supposed to appear
18 for drug testing and whether he appeared or not. It shows that Mr. Tennant did not appear
19 for testing on January 9th, February 13th and 17th. On January 26th, Ms. Adamski-Soto went
20 to Mr. Tennant's home and asked if he would be surprised if his drug test came back positive
21 for methamphetamine. Mr. Tennant denied smoking methamphetamine and said he would
22 be surprised. He appeared to be intoxicated when he opened the door, almost falling out of
23 the elevated manufactured home. He had a metal marijuana pipe in his hand.
24    Mr. Tennant admitted he smoked synthetic marijuana in the pipe that day. The pipe
25 was not tested for drugs because Mr. Tennant said he smoked spice with it. The package of
26 spice was not available because Mr. Tennant said he threw it away and was so intoxicated
27 that Ms. Adamski-Soto did not ask him to retrieve the package from the trash. Mr. Tennant
28

1  said he bought spice at a smoke shop. He was not tested for for cannabinoids because the
2  labs were already closed that night. He was not asked to test the next day but was asked to
3  come to the office. The probation office does not test for synthetic marijuana.

4        One of Mr. Tennant's conditions of supervised release was that he attend Moral
5  Reconation Therapy. On December 30th, Mr. Tennant was told that he needed to start the
6  therapy on January 9th. The probation officers who facilitate the class keep records of who
7  attends. Exhibit 7 is a series of emails between the head facilitator, Georgeanna Adams, and
8  Ms. Adamski-Soto. It shows that Mr. Tennant did not attend therapy on January 9th and 30th
9  and February 13th and 17th. Ms. Adamski-Soto went to Mr. Tennant's home on January 13th
10 to talk to him about missing the drug tests and therapy sessions. He said he would start
11 going, and he did attend therapy on January 16th. He went to two sessions and never went
12 back, even though he said he liked it.

13       Mr. Tennant was required to maintain employment. He worked as a day laborer. It
14 was the first regular job he had in 30 years, according to the PSR. Mr. Tennant told Ms.
15 Adamski-Soto that he was buying the trailer he lived in. He also said it was the first time in
16 his life that he owned or rented a residence; he was homeless his entire life. He provided no
17 proof of employment or proof that he was purchasing his home.

18       B. <u>Bobby Lee Tennant</u>

19       Mr. Tennant is 60 years old. He testified that when he was released from prison, he
20 resided at the New Beginnings half-way house for 4 months. During that time he took a one-
21 day class and received his certification as a flagger. The certification is listed in a national
22 data base. It's the first certification he's ever held, and it helped him get the first job he's held
23 in 30 years. He is proud of his job. Mr. Tennant earns $10.00 per hour, and time and a half
24 for anything over 8 hours. He works about 12 to 15 hours a day, when there's work. He
25 worked every day from December 1st to December 8th. Work was probably steady in
26 February and was steady in March until he got arrested.

27
28

4

In order to find out if there is work, Mr. Tennant shows up at the labor office at 5:30 a.m. He usually rides with other workers to the job site. He's been working for Union Pacific, holding signs at the railroad crossings. The rules do not allow him to have a cell phone on the job, and he cannot leave the site. By the time he gets off work, TASC and the probation office are closed. Mr. Tennant has 2 cell phones. One is provided through public assistance and has 200 minutes per month. The phones are often dead or run out of minutes.

When Mr. Tennant was released from the half-way house, he heard about a trailer park. He began renting to own a trailer for $150.00 per month. He pays for utilities and bought some furniture. Mr. Tennant lives with a roommate who was supposed to help with the expenses. The roommate stopped helping, so Mr. Tennant pays for everything himself. This is the first home he has ever owned or rented. He has always lived in a tent on the streets. Mr. Tennant is about $600.00 behind in his electric bill and has only 3 payments of $150.00 each until he owns the trailer.

Mr. Tennant testified that he called and left messages at the phone number that the probation officer gave him. Sometimes he hangs up without leaving a message because he has a "short fuse." Sometimes he reaches another lady. He claims that he can never reach Ms. Adamski-Soto when he calls, and she never calls back. When Mr. Tennant calls, another lady answers and tells him it's not "Gloria's" phone, but he's calling the numbers that are on the probation card he was given. He also admitted that he doesn't always call when he's supposed to because if it's a work day he leaves too early, gets home too late, and cannot have his phone on the job.

Mr. Tennant admitted that he has trouble attending moral reconation therapy because it's from 3:00 to 4:00 in the afternoon and he doesn't get off work until between 5:00 and 8:00 p.m. He attended three sessions. He called and left messages on the answering machine when he couldn't attend. He has not provided his pay stubs to the probation officer, claiming she never asked for them.

Complying with drug testing has been difficult. Once Mr. Tennant had his boss drive him to TASC. Mr. Tennant was told there would be a 30-minute wait. His boss was waiting for him, and they were late for work, so Mr. Tennant left. If Mr. Tennant was supposed to test and it was a work day, he would not test because his job comes first. He went other times, but he was not allowed to test because it was not the day of his color.

Mr. Tennant testified that he was not high on synthetic marijuana on January 26th. He did not almost fall out the door. The trailer door gets stuck. He was tired from work, was not high, but did smoke spice. Mr. Tennant told Ms. Adamski-Soto that he smoked spice, not synthetic marijuana, but he did not smoke it out of the pipe (Exhibit 5). The pipe was used for tobacco. The spice Mr. Tennant smoked was purchased over the counter from a head shop and is called "Hong Kong". He doesn't know what's in it but it calms him down.

## II. Conclusions of Law

The Court finds that the government proved by a preponderance of the evidence that Mr. Tennant did not follow the instructions of the probation officer to attend scheduled office visits on January 30 and February 24, 2015. That may have been because Mr. Tennant was working, but there was no evidence that he was working on those dates. It appears from Mr. Tennant's testimony that he made efforts to meet with the probation officer but he went to the office on his own schedule, rather than at the times scheduled by the probation officer. The same holds true for Allegations C(1) and (2). Mr. Tennant attended therapy and went for drug tests when his work schedule permitted, rather than when he was instructed to attend. The Court finds that Mr. Tennant's testimony regarding Allegation B(3), the pipe he possessed, was not credible. The probation officer testified that Mr. Tennant told her he smoked spice in the pipe, not tobacco, and he exhibited signs of intoxication.

The government did not prove by a preponderance of the evidence that Mr. Tennant used amphetamines on January 13, 2015. Exhibits 1 and 2 fell short of proving that the sample tested was collected from Mr. Tennant and that there was a proper chain of custody. Neither did the government prove that Mr. Tennant used synthetic marijuana. Mr. Tennant

6

testified that he purchased spice at a head shop and smoked it to relax. There was no evidence presented that the substance he smoked was synthetic marijuana.

The Court recommends that the District Court take into consideration that Mr. Tennant was struggling to adjust to activities of daily life, such as working and living in a home, which as a 60-year-old man he had never done before. He received training and secured employment for the first time in 30 years. Those are are major accomplishments. The Court acknowledges that Mr. Tennant was not compliant and was probably difficult to supervise but recommends that the District Court consider releasing the defendant under appropriate conditions to allow him to continue to work and finish paying for his trailer so he has a stable residence.

Having considered the exhibits, testimony and arguments of counsel, the Magistrate Judge finds by a preponderance of the evidence that Defendant violated conditions of supervised release stated in allegations A (1), B(3) and C(1) and (2) of the petition. *United States v. Thum*, 749 F.3d 1143, 1145 (9th Cir. 2014); 18 U.S.C. § 3583(e)(3). Allegations B(1) and (2) were not proven by a preponderance of the evidence and should be dismissed..

**RECOMMENDATION FOR DISPOSITION BY THE DISTRICT COURT JUDGE**

Based on the foregoing and pursuant to 28 U.S.C. § 636(b)(1) (B) and Rule 57.6(d)(4), LRCrim, the Magistrate Judge **RECOMMENDS** that the District Court, after an independent review of the record, find that the Defendant violated Standard Conditions No. 1 and 9, and Special Condition 1 of his terms of supervised release. A Disposition Hearing is scheduled for June 17, 2015 at 11:00 before United States District Court Judge Rosemary Marquez**.**

Pursuant to 28 U.S.C. §636(b)(1), any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Thereafter, the parties have ten (10) days within which to file a response to the objections.

1 | If objections are not timely filed, the party's right to de novo review may be waived. No
2 | replies shall be filed unless leave is granted from the District Court.
3 |     DATED this 22nd day of April, 2014.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge